UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



CHRISTOPHER KOCHAN,

        Plaintiff,

v.

CORI KOWALSKI, *Town of Ellicottville Police Officer*, DEPUTY WILLIAM J. HUNT, *County of Cattaraugus Sheriff*, LORI PETTIT RIEMAN, *County of Cattaraugus District Attorney*, JILLIAN KOCH, *County of Cattaraugus Court Clerk Secretary*, MARY REYNOLDS, *County of Cattaraugus Personal Assistant to County Judge*, and UNKNOWN PERSONS,

        Defendants.

**DECISION AND ORDER**

1:19-CV-00251 EAW

## **INTRODUCTION**

*Pro se* plaintiff Christopher Kochan ("Plaintiff") asserts a claim for excessive use of force against defendants Cori Kowalski and William J. Hunt and claims for conspiracy to deny First Amendment rights and First Amendment retaliation against defendants Lori Pettit Rieman, Jillian Koch, and Mary Reynolds. (Dkt. 2 at 31-38). Presently before the Court are: (1) a motion to dismiss for failure to state a claim filed by Reynolds and Koch (Dkt. 17); (2) a motion to dismiss for failure to state a claim filed by Kowalski (Dkt. 18); and (3) a motion to dismiss for failure to state a claim filed by Hunt and Rieman (Dkt. 20). For the reasons that follow, the Court dismisses Plaintiff's claims against Rieman, Koch,

- 1 -

and Reynolds, but denies the pending motions with respect to Plaintiff's claims against Kowalski and Hunt.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Amended Complaint (Dkt. 2), which is the operative pleading. As is required at this stage of the proceedings, the Court has treated Plaintiff's allegations as true.

### I. Facts Relevant to First Amendment Claims

Plaintiff resides in the Town of Little Valley, which is within Cattaraugus County. (Dkt. 2 at ¶ 1). Plaintiff has a long litigation history in Cattaraugus County, much of which involves Rieman, Koch, and Reynolds. (*See id.* at ¶¶ 21-24, 28-29). As a result of his experiences, Plaintiff created a website, CatCountyCorruption.com, which "publishes detailed descriptions of questionable conduct by public servants and/or their servants and/or agents focusing on the Cattaraugus County, New York area." (*Id.* at ¶¶ 25-26). Plaintiff posted articles about Rieman, Koch, and Reynolds on this website. (*Id.* at ¶ 26).

On or about June 7, 2016, Rieman, Koch, and Reynolds "submit[ted] individual complaints to the hosting service of Plaintiff's website CatCountyCorruption.com." (*Id.* at ¶ 140). Plaintiff alleges upon information and belief that Koch, Rieman, and Reynolds "submitted their fraudulent complaints while at work." (*Id.* at ¶ 141). Because of a medical situation involving one of Plaintiff's family members, he "was unaware of the e-mail notices he had received from the hosting service alleging violation of terms of service. . . ." (*Id.* at ¶ 143). Plaintiff discovered that his website had been suspended on June 9, 2016, which caused "substantial mental anguish." (*Id.* at ¶ 144).

## II. Facts Relevant to Excessive Force Claim

In the early morning hours of February 27, 2016, Plaintiff was driving to his home in Little Valley, traveling on Route 219 through the Town of Ellicottville. (*Id.* at ¶ 32). As Plaintiff left the Village of Ellicottville, he became suspicious that he was being followed by a Town of Ellicottville police car. (*Id.* at ¶¶ 33-34). "Plaintiff's sense of self-preservation kicked in and/or anxiety that developed [due to] the corruption Plaintiff had been just recently exposed to appeared to overcome him" and he turned onto a side street "in an attempt to get home safely and avoid any contact with the Town of Ellicottville Police Cruiser that Plaintiff thought was following him." (*Id.* at ¶ 35).

As Plaintiff continued to drive, another automobile "flew by . . . in the opposite direction headed towards Ellicottville." (*Id.* at ¶ 37). This vehicle, which Plaintiff later learned was operated by Kowalski, a Town of Ellicottville police officer, then "commenced an illegal u-turn without activating his turn signals or any emergency lights. . . ." (*Id.* at ¶¶ 39-40). Plaintiff also observed on his right a parked Cattaraugus County Sheriff's Department patrol cruiser operated by Hunt, who is a Cattaraugus County deputy sheriff. (*Id.* at ¶¶ 41-42). Kowalski and Hunt operated their vehicles in a reckless fashion while Plaintiff continued to drive towards Little Valley. (*Id.* at ¶¶ 44-48).

Kowalski and/or Hunt at some point turned on their emergency lights, but Plaintiff was "severely worried about his life being in danger" and "decided that it would be better to attempt to travel to a safe location and stop at the County of Cattaraugus Sheriff's Department. . . ." (*Id.* at ¶¶ 52-53). Plaintiff subsequently "changed his mind . . . and

decided to travel to what he believed was [a] safe location, the center of Little Valley where there was a convenience store. . . ." (*Id.* at ¶ 53).

Kowalski continued to drive dangerously, in violation of the Ellicottville Police Department's pursuit policy. (*Id.* at ¶¶ 54-56). Kowalski and Hunt eventually "boxed in" Plaintiff and he "came to a complete stop." (*Id.* at ¶ 64). Within "two seconds" of Plaintiff stopping, Kowalski unholstered his pistol and pointed it at Plaintiff. (*Id.* at ¶ 65). Plaintiff "immediately raise[d] his hands in terror and froze in fear." (*Id.* at ¶ 66). Plaintiff could see Kowalski's and Hunt's lips moving but could not hear what they were saying because his car stereo was on. (*Id.* at ¶ 70). Plaintiff "slowly moved his right hand downward to turn of[f] the stereo and started to slowly turn his head back to the drivers-side window" when Kowalski "without warning" shot out his window. (*Id.* at ¶¶ 71-72). "Glass projectiles hit Plaintiff's face and some ended up in his mouth." (*Id.* at ¶ 73).

Kowalski ran to the passenger's side of Plaintiff's car, opened the door, and unfastened Plaintiff's seatbelt. (*Id.* at ¶ 74). Kowalski and Hunt then violently pulled Plaintiff from his car. (*Id.*). Once Plaintiff had been removed from the car, Kowalski and Hunt "threw Plaintiff violently to the pavement," causing "serious injuries to Plaintiff's head that rendered Plaintiff unconscious." (*Id.* at ¶ 75). Hunt and Kowalski "stomp[ed]" on Plaintiff and attempted to "crush Plaintiff's skull into the cold, hard pavement" both while he was unconscious and regaining consciousness. (*Id.* at ¶¶ 79-80). Plaintiff was taken to Olean General Hospital in an ambulance, with blood flowing from his left ear. (*Id.* at ¶ 95).

Kowalski subsequently caused Plaintiff to be charged with inadequate lights, failing to signal a stop, and misdemeanor driving while intoxicated. (*Id.* at ¶ 106). Blood test results later showed that Plaintiff was not intoxicated. (*Id.* at ¶ 120).

## **PROCEDURAL BACKGROUND**

Plaintiff commenced this action on February 26, 2019. (Dkt. 1). He served Defendants on May 13, 2019. (Dkt. 3; Dkt. 4; Dkt. 5; Dkt. 6; Dkt. 7). On May 16, 2019, Plaintiff filed an Amended Complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(A). (Dkt. 2).

Koch and Reynolds filed their motion to dismiss on July 8, 2019. (Dkt. 17). Kowalski filed his motion to dismiss on July 12, 2019. (Dkt. 18). Hunt and Rieman filed their motion to dismiss on July 16, 2019. (Dkt. 20). Plaintiff filed his opposition to Kowalski's, Koch's, and Reynolds' motions on July 31, 2019. (Dkt. 22; Dkt. 23; Dkt. 24). Plaintiff filed his opposition to Hunt's and Rieman's motion on August 20, 2019. (Dkt. 26; Dkt. 27). Kowalski filed reply papers on August 29, 2019. (Dkt. 31). Koch, Reynolds, Hunt, and Rieman filed reply papers on September 3, 2019. (Dkt. 32; Dkt. 33).

Plaintiff filed a motion to file a sur-reply with respect to Kowalski's motion on September 9, 2019. (Dkt. 34). The Court granted this motion on September 16, 2019. (Dkt. 35). Plaintiff has also filed motions to file sur-replies regarding Koch's, Reynolds', Hunt's, and Rieman's motions. (Dkt. 37; Dkt. 38). The Court grants these motions and has reviewed Plaintiff's sur-replies, which were attached to his moving papers, in assessing the pending motions to dismiss.

# DISCUSSION

## I. <u>Legal Standard</u>

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II. Excessive Force Claim Against Kowalski and Hunt

The Court first assesses the sufficiency of Plaintiff's excessive force claim against Kowalski and Hunt. "The Fourth Amendment, which protects against unreasonable seizures, governs a claim that excessive force was used in connection with an arrest." *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002). "[T]he reasonableness question is whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances . . . without regard to their underlying intent or motivation." *Id.* "A plaintiff need not demonstrate serious injury to prevail in an excessive force claim [under the Fourth Amendment]." *Sforza v. City of New York*, No. 07 Civ. 6122(DLC), 2009 WL 857496, at *15 (S.D.N.Y. Mar. 31, 2009); *see also Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising.").

Here, Kowalski and Hunt each seek dismissal of Plaintiff's excessive force claim, but on different bases. Kowalski argues that Plaintiff's claim against him should be dismissed because "probable cause [is] a complete defense for claims of false arrest and false imprisonment" and "Plaintiff's complaint is silent as to the disposition of the charges for which he was indicted." (Dkt. 18-2 at 2). This argument is wholly frivolous. Plaintiff has not asserted a false arrest or false imprisonment claim against Kowalski but has instead clearly indicated that he is alleging that Kowalski violated his Fourth Amendment rights through the use of excessive physical force. (*See* Dkt. 2 at ¶¶ 159-177). It is well-established that "[w]hether probable cause for the arrest existed is not dispositive of an

- 7 -

excessive-force claim." *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 437 (W.D.N.Y. 2018) (collecting cases). Because Kowalski has identified no other basis for dismissal, his motion is denied in its entirety.

Turning to Hunt, he seeks dismissal on the following grounds: (1) the force he used in arresting Plaintiff was not excessive; (2) Plaintiff has not plausibly pleaded a failure to intervene; and (3) Hunt is entitled to qualified immunity. The Court is unpersuaded by these arguments, for the reasons that follow.

First, the Court cannot say as a matter of law that the force Hunt allegedly used was reasonable. "When excessive force is alleged, a court must determine whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Humbach v. Canon*, No. 13-CV-2512 (NSR), 2019 WL 1369464, at *7 (S.D.N.Y. Mar. 25, 2019) (citation and internal quotation marks omitted). "[T]he inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). When performing this balancing, the Court is "guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.*

While Hunt has cited cases supporting the proposition that forcibly removing an uncooperative suspect from a vehicle is not excessive (*see* Dkt. 20-1 at 7), that is not

Plaintiff's only allegation in this case. Plaintiff further alleges that after he was removed from the vehicle, Hunt and Kowalski violently threw him to the pavement, injuring his head and rendering him unconscious. Hunt contends that "gravity dictated that if plaintiff, a non-cooperative adult male were pulled from his vehicle, his body would meet the ground." (Dkt. 20-1 at 8). The basis for this assertion is unclear. It is plausible that two police officers would be able to support the weight of an adult male who was not struggling but was instead frozen in fear. Moreover, Plaintiff does not allege that he fell to the ground—he specifically alleges that Hunt and Kowalski "threw Plaintiff violently to the pavement." (Dkt. 2 at ¶ 75). The Court must, at this stage of the proceedings, treat this allegation as true and draw all inferences therefrom in Plaintiff's favor. The Court cannot, as Hunt urges, simply conclude that it was gravity that caused Plaintiff to hit the pavement and not action by Hunt and Kowalski.

Hunt also urges the Court to disregard Plaintiff's allegation that Hunt and Kowalski stomped on his skull while he was unconscious on the ground, claiming that it is "speculative, inasmuch as plaintiff specifically plead[ed] that he was unconscious and has pointed to no physical, medical, or other evidence to support this claim." (Dkt. 20-1 at 10). However, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" when a defendant seeks dismissal. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." (citation and internal quotation

marks omitted)). Plaintiff is not required, at this stage of the proceedings, to substantiate his allegations. Moreover, Hunt has once again misconstrued the Amended Complaint. Plaintiff has alleged that Hunt and Kowalski "stomp[ed]" on him "while [he] was regaining consciousness." (*Id.* at ¶ 80). It is plausible that Plaintiff could have observed these actions as he began to regain control of his faculties.

Crediting, as it must, Plaintiff's claims that Hunt violently threw him to the pavement and then stomped on his head, the Court cannot say as a matter of law that this force was reasonable. The most serious crime of which Plaintiff was allegedly suspected was a misdemeanor, he was not armed nor did he attempt to fight the officers, and while he may have initially attempted to flee, that attempted flight had ended by the time he was removed from his vehicle. The Court therefore finds that Plaintiff has adequately alleged that the force Hunt used against him was excessive and unreasonable. *See Pace v. Waterbury Police Dep't*, No. 3:17-CV-00426(DJS), 2017 WL 1362683, at *2 (D. Conn. Apr. 12, 2017) (finding the plaintiff adequately alleged excessive use of force where he alleged that during the course of his arrest officers "grabbed him by the throat, threw him to the ground, kicked him, kneed him, and slammed his head and chin against the ground repeatedly").

Turning to Hunt's argument regarding failure to intervene, the Court notes that "an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so." *Jordan v. Fischer*, 773 F. Supp. 2d 255, 274 (N.D.N.Y. 2011). Here, for the reasons discussed

above, the Court concludes that Plaintiff has plausibly alleged that Hunt directly participated in the assault against him. Accordingly, the Court need not and does not reach the issue of whether Hunt could alternatively be found liable for excessive use of force because he failed to intervene.

Finally, the Court finds that Hunt is not entitled to qualified immunity at this stage of the proceedings. "Qualified immunity protects public officials from civil liability only if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015). "[Q]ualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." *Walker v. Shult*, 717 F.3d 119, 130 (2d Cir. 2013).

In the instant matter, further facts are required to decide the question of qualified immunity. "[I]n the context of excessive force, the Fourth Amendment reasonableness inquiry tends to converge with the qualified immunity reasonableness inquiry." *Spencer*, 2019 WL 4514011, at *7 n.8 (quoting *Wang v. Wahldieck*, No. 09-CV-3783 (ARR)(VVP), 2012 WL 119591, at *11 (E.D.N.Y. Jan. 9, 2012) (citing *Cowan v. Breen*, 352 F.3d 756, 764 & n.7 (2d Cir. 2003))). Because the Court finds Plaintiff has adequately alleged a Fourth Amendment claim against Hunt, Hunt's motion to dismiss on the basis of qualified immunity is denied. *See id.* (denying defendant's motion to dismiss on the basis of qualified immunity); *see also Crawford v. City of New London*, No. 3:11-CV-1371 JBA, 2014 WL 186417, at *7 (D. Conn. Jan. 16, 2014) (denying motion to dismiss based on qualified immunity because "it is hardly clear that officers of reasonable competence would

think that the use of force claimed by Plaintiff was objectively reasonable" where officers "threw him to floor, and then struck him and slammed his head into the ground").

### III. Conspiracy Claim Against Rieman, Koch, and Reynolds

The Court turns next to Plaintiff's conspiracy claim against Rieman, Koch, and Reynolds. Plaintiff alleges that, in violation of 42 U.S.C. § 1985(3), these defendants conspired to deny him his rights under the First Amendment by filing false complaints with his website hosting company. (Dkt. 2 at ¶¶ 178-188). This claim fails as a matter of law.

"Section 1985(3) contains two separate clauses, commonly referred to as the 'deprivation' clause and the 'hindrance' clause, each of which provide civil remedies for separate and distinct types of unlawful conduct." *Zhang Jingrong v. Chinese Anti-Cult World All.*, 287 F. Supp. 3d 290, 297 (E.D.N.Y. 2018). The deprivation clause "prohibits two or more persons from conspiring 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Id.* (quoting 42 U.S.C. § 1985(3)). As the Second Circuit has explained, to state a claim under the deprivation clause, a plaintiff must allege:

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006) (internal quotations omitted). In addition, "the Deprivation Clause requires that a plaintiff belong to a protected class." *Zhang Jingrong*, 287 F. Supp. 3d at 297; *see also Jews for Jesus, Inc. v. Jewish Cmty.*

*Relations Council of New York, Inc.*, 968 F.2d 286, 291 (2d Cir. 1992) ("The Supreme Court added the 'class-based animus' requirement in order to prevent § 1985(3) from being broadly—and erroneously—interpreted as providing a federal remedy for all tortious, conspiratorial interferences with the rights of others." (quotation omitted)).

Here, Plaintiff has not pled a viable claim under the deprivation clause because he has not alleged that he belongs to a protected class or that Rieman, Koch, and Reynolds were motivated by class-based animus. *See, e.g., Flores v. Cook*, No. 3:19-CV-1181 (SRU), 2019 WL 5864513, at *3 (D. Conn. Nov. 8, 2019) ("[The plaintiff] alleges no facts supporting a racial or class-based conspiracy, and therefore fails to state a plausible section 1985(3) claim."); *Joyner-El v. Giammarella*, No. 09 CIV. 3731 (NRB), 2010 WL 1685957, at *7 (S.D.N.Y. Apr. 15, 2010) ("The plaintiff's Section 1985(3) claim necessarily fails due to the absence of any plausible allegation concerning racial or otherwise class-based discriminatory animus motivating the defendants' alleged misconduct.").

Plaintiff also has not stated a viable claim under § 1985(3)'s hindrance clause. "Case law interpreting the Hindrance Clause is sparse." *Jenkins v. Miller*, 983 F. Supp. 2d 423, 462 (D. Vt. 2013). However, the courts that have considered it have concluded that "a claim under the Hindrance Clause requires the following: (1) the purpose of the conspiracy must be to interfere with state law enforcement, not just to interfere with the persons seeking to exercise their legal rights; (2) the conspiracy must be directed at a protected class; and (3) the conspiracy must implicate a constitutional right." *Zhang Jingrong*, 287 F. Supp. 3d at 300 (quotations and alteration omitted). Here, as already discussed, Plaintiff has not plausibly alleged that the conspiracy at issue was directed at a

protected class. Moreover, he has not alleged that the purpose of the conspiracy was to interfere with state law enforcement. Accordingly, he has not stated a viable § 1985(3) claim under the hindrance clause.

For all these reasons, the Court grants Rieman's, Koch's, and Reynolds' request to dismiss Plaintiff's claim under § 1985(3).

## IV. First Amendment Retaliation

Plaintiff alleges that Rieman, Koch, and Reynolds retaliated against him, in violation of his First Amendment rights, by filing false complaints with his website hosting company. (*See* Dkt. 2 at ¶¶ 189-200). The Court finds that this claim also fails as a matter of law.

Plaintiff's First Amendment retaliation claim is brought pursuant to 42 U.S.C. § 1983. "Plaintiffs bringing suit under 42 U.S.C. § 1983 are . . . required to demonstrate that defendants acted under color of state law when they engaged in the challenged conduct." *Faddis-DeCerbo v. Astor Servs. for Children & Families*, 500 F. App'x 46, 47 (2d Cir. 2012). "To act under color of state law or authority for purposes of section 1983, the defendant must have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) (quotations omitted). "[I]t is . . . axiomatic that under color of law means under pretense of law and that acts of officers in the ambit of their personal pursuits are plainly excluded." *Pitchell v. Callan*, 13 F.3d 545, 547-48 (2d Cir. 1994) (quotation omitted).

Here, Plaintiff has alleged only that Rieman, Koch, and Reynolds were "at work" (Dkt. 2 at ¶ 141) when they submitted their complaints. He has not alleged that they invoked their respective offices when they made the complaints or that they otherwise abused the power of the state. *See Doe v. Waraksa*, No. 3:06-CV-1262 VLB, 2013 WL 597800, at *9 (D. Conn. Feb. 13, 2013) ("[T]he color of law requirement cannot be satisfied in the absence of any affirmative act by a defendant to assert his authority under state law."), *aff'd*, 560 F. App'x 67 (2d Cir. 2014). To the contrary, the exhibits to Plaintiff's Amended Complaint, which the Court may consider on a motion to dismiss, show that the complaints consisted solely of the following: "Please remove any reference to Jillian Koch from http://catcountycorruption.com/" (Dkt. 2 at 89); "Please remove any reference to Lori Rieman from catcountycorruption.com" (*id.* at 91); and "Please remove any reference to Mary Reynolds from http://catcountycorruption.com/" (*id.* at 93). Nothing in these complaints reflects any exercise of power conferred on these defendants by state law.

Accordingly, Plaintiff has not plausibly alleged that these defendants were acting under color of state law when they allegedly retaliated against him by filing complaints with his website hosting service.[1] *See Isaacs v. City of New York*, No. 10-CV-4177 NGG

---

[1] The Court does not read the Amended Complaint as alleging any other particular acts of retaliation by these defendants. Moreover, all the other conduct described by Plaintiff as to these defendants regards their official involvement in his various legal proceedings. Such acts are protected by absolute prosecutorial immunity with respect to Rieman and by absolute judicial immunity with respect to court employees Koch and Reynolds. *See Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" (alteration in original and quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994))); *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019)

RLM, 2012 WL 314870, at *2 (E.D.N.Y. Feb. 1, 2012) (collecting cases holding "on-duty status insufficient to show that an officer acted under color of law"); *Segreto v. Kirschner*, 977 F. Supp. 553, 562 (D. Conn. 1997) (explaining that "[s]tatus as a[n] . . . officer, or conduct occurring at work, is simply not enough" to support a finding of action under color of state law). As such, Plaintiff's First Amendment retaliation claim against Rieman, Koch, and Reynolds must be dismissed.

## CONCLUSION

Plaintiff's pending motions to file sur-replies (Dkt. 37; Dkt. 38) are granted. The Court has considered Plaintiff's sur-replies, which were attached to his motions, in deciding the pending motions to dismiss.

For the reasons discussed above, the Court grants Koch and Reynolds' motion to dismiss (Dkt. 17), denies Kowalski's motion to dismiss (Dkt. 18), and grants Rieman's and Hunt's motion to dismiss (Dkt. 20) with respect to Rieman but denies it with respect to Hunt. In light of Plaintiff's *pro se* status, the dismissal of his claims against Rieman, Koch, and Reynolds is without prejudice. The Clerk of Court is directed to terminate Rieman, Koch, and Reynolds as defendants in this matter. Kowalski and Hunt shall answer the Amended Complaint in accordance with Federal Rule of Civil Procedure 12(a)(4).

---

("Judges are granted absolute immunity from liability for acts taken pursuant to their judicial power and authority," and such immunity extends to "others who perform functions closely associated with the judicial process." (quotations omitted)).

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: December 27, 2019
      Rochester, New York