**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CHRISTOPHER JOHN KOCHAN,**

**Plaintiff,**

**v.**

**19-CV-251W(Sr)**

**CORI KOWALSKI, et al.,**

**Defendants.**

---

**DECISION AND ORDER**

This matter was referred to the undersigned by the Hon. Elizabeth A. Wolford, in accordance with 28 U.S.C. § 636(b), for all pretrial matters, following Chief Judge Wolford's Decision and Order granting defendants' motions to dismiss claims against defendants Rieman, Koch and Reynolds and denying motions to dismiss claims against defendants Kowalski and Hunt. Dkt. #43. As the complaint currently stands, plaintiff alleges that defendant Kowalski, a police officer with the Town of Ellicottville, and defendant Hunt, a Cattaraugus County Sheriff, used excessive physical force when they arrested plaintiff following a traffic stop on February 27, 2016. Dkt. #2.

Currently before the Court is defendant Hunt's motion to quash ten subpoeas (Dkt. #86), and plaintiff's cross motion to compel. Dkt. #89.

"The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Syposs v. U.S.*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998); *See Weinstein v.*

*University of Connecticut*, No. 07 Civ. 3219, 2012 WL 3443340, at *2 (D. Conn Aug. 15, 2012) (*citing* Advisory Committee Notes to 1970 Amendments to Rule 45 stating that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

The Advisory Committee Notes to the 2015 Amendment clarifies that the rule was amended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." The court is required to limit discovery that it determines "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Pursuant to Fed. R. Civ. P. 45(c)(3)(B)(I), "a court may quash, modify or condition a subpoena to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information." *Syposs*, 181 F.R.D. at 226. Whether a subpoena imposes an undue burden depends upon consideration of "relevance, the need of the party for the documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Libaire v. Kaplan*, 760 F. Supp.2d 288, 293-94 (E.D.N.Y. 2011). Another consideration is "whether the requested information can be obtained from the parties themselves." *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D.

67, 69 (S.D.N.Y. July 27, 2020). "[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under rules 26 and 34." *Id., quoting Burns v. Bank of America*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007).

While the initial burden of demonstrating relevance is borne by the party seeking discovery, *Quotron Sys., Inc. v. Automatic Data Processing, Inc*., 141 F.R.D. 37, 41 (S.D.N.Y. 1992), the movant on a motion to quash a subpoena bears the ultimate burden of persuasion. *Sea Tow Int'l v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007). Even where a "party lacks standing to challenge a subpoena on a non-party, the Court may nevertheless exercise its inherent authority to limit irrelevant or non-proportional discovery." *Hughes v. Hartford Life & Accident Ins. Co.*, 507 F. Supp.3d 384, 405 (D. Ct. 2020); *See Allstate Ins. Co. v. All County, LLC*, 2020 WL 5668956, at *2 (E.D.N.Y. Sept. 22, 2020) ("question of standing is beside the point where the objection to the subpoena is on relevance or proportionality"). The decision whether to quash or modify a subpoena is committed to the sound discretion of the trial court. *Libaire,* 760 F. Supp.2d at 291.

<u>Grand Jury Testimony</u>

Plaintiff's subpoena to the Records Custodian, Cattaraugus County District Attorney's Office, seeks a "[t]rue, correct and complete copy of all Grand Jury testimony related to People v. Kochan 16-116 authenticated by the records custodian." Dkt. #86-2, p.35.

Defendant argues that plaintiff has failed to demonstrate particularized need to overcome the secrecy afforded grand jury proceedings. Dkt. #86-3, pp.3-6.

Plaintiff argues that he should be able to use the grand jury minutes to impeach defendants. Dkt. #89-2, p.4.

Pursuant to New York Criminal Procedure Law § 190.25(4), grand jury testimony is secret and may not be disclosed except by court order. Because the federal courts are not bound by state law protecting the secrecy of grand jury proceedings, however, a federal court presiding over a federal civil action must make an independent determination as to whether grand jury transcripts should be released. *Anilao v. Spota*, 918 F. Supp.2d 157, 171 (E.D.N.Y. 2013); *See Baynes v. Ruderfer*, 234 F. Supp.3d 574, 577 (S.D.N.Y. 2017) (Although federal courts recognize state privileges where there is no substantial cost to substantive and procedural policy, state courts do not have a veto over disclosure in federal civil rights cases).

Under federal law, disclosure of grand jury minutes requires that the moving party demonstrate a particularized need for them. *Fox v. County of Yates*, 657 Fed. App'x 60, 63 (2d Cir. 2016). A party seeking to unseal grand jury minutes may demonstrate particularized need by showing that the material sought is needed to avoid a possible injustice in another judicial proceeding; that the need for disclosure is greater than the need for continued secrecy; and that the request is structured to cover only such material. *Douglas Oil Co. of Cal. v. Petrol Stops NW.*, 441 U.S. 211, 222 (1979). It is not enough to assert that grand jury testimony might be used to impeach a witness or refresh a witness's recollection; the moving party must demonstrate some specific respect in which the grand jury testimony likely contradicts trial evidence or supplies material information that is otherwise lacking. *Baynes*, 234 F. Supp.3d at 578.

Plaintiff has failed to establish a particularized need for grand jury transcripts to impeach defendants' testimony with respect to plaintiff's claims of excessive force during the course of his arrest. As plaintiff does not allege that there were any other witnesses to his arrest, testimony from other grand jury witnesses would not be relevant to this action. With respect to impeachment of defendants, plaintiff has failed to demonstrate a particularized need for defendants' grand jury testimony, given

his acknowledgment of other allegedly conflicting statements available for this purpose. For example, plaintiff alleges that defendant Hunt indicated in charging documents that he assisted defendant Kowalksi in handcuffing plaintiff and testified before the grand jury that he assisted defendant Kowalksi in handcuffing plaintiff, but testified at trial that he did not make any physical contact with plaintiff. Dkt. #89-2, pp.13-14. Thus, plaintiff can highlight this alleged inconsistency using the charging document and the state trial testimony without need for the grand jury testimony. Similarly, plaintiff alleges that defendant Kowalski testified in state court proceedings that plaintiff came to a stop of his own accord but testified before the grand jury that he and defendant Hunt boxed in plaintiff's vehicle in order to stop it. Dkt. #89-2, p.14. Given that the charging document also indicates that defendant Kowalski "blocked" plaintiff's vehicle in order to stop it (Dkt. #89-79, p.8), plaintiff can highlight this alleged inconsistency without use of grand jury testimony. More generally, the Court finds that plaintiff has failed to allege sufficient disparities between defendants' grand jury testimony and numerous other recitations of events by defendants to require disclosure of defendants' grand jury testimony as a necessary means of avoiding injustice in this action. Accordingly, the motion to quash is granted with respect to the subpoena of grand jury minutes in the state court proceeding and plaintiff's motion to compel is denied.

BAC Device Certifications from Police Officer Amber Graham

Plaintiff's subpoena to the Records Custodian of the New York State Division of Criminal Justice Services seeks copies of "all permits/certifications on every Breath Alcohol Measurement Device for Police Officer Amber Graham (Ellicottville, New York Police Department) since 12/17/2009." Dkt. #86-2, p.9.

Defendant argues that the BAC device certifications of P.O. Graham are not related to any allegation in this case. Dkt. #86-3, p.8. Defendant notes that P.O. Graham is not a defendant in this action and there is no allegation that P.O. Graham administered a breath alcohol test to plaintiff on February 27, 2016. Dkt. #86-3, p.8.

Plaintiff argues that the certification records "are specific to the creditability of potential witness Amber Graham." Dkt. #89-2, p.11. Plaintiff relies upon a prior civil action (17-CV-452), in which he alleged that P.O. Graham was not certified for the BAC device. Dkt. #89-2, p.11. Plaintiff alleges that P.O. Graham is a potential witness in this action as she "was in possession and control of the body camera for a majority of the time on scene as well as the whole time inside Olean General Hospital." Dkt. #89-2, pp.9 & 11. Plaintiff alleges that 10 minute segments of the video at the hospital "came up missing." Dkt. #89-2, p.11.

Plaintiff's amended complaint alleges that P.O. Graham read plaintiff *Miranda* rights while he was in the hospital and asked for a blood sample, which plaintiff allowed. Dkt. #2, ¶¶ 100 & 102. There are no allegations that anyone utilized a Breath Alcohol Measurement Device upon plaintiff on February 27, 2016. Moreover, P.O. Graham's certification (or lack thereof), for BAC devices is irrelevant to any concerns plaintiff may have as to the body camera footage from that night. Accordingly, the motion to quash is granted with respect to this subpoena and plaintiff's motion to compel is denied.

Disciplinary Records of Defendants and Non-Party Police Officers

Plaintiff's subpoenas to the Records Custodian of the Ellicottville Police Department, Salamanca Police Department, Cattaraugus County Sheriff's Office and Hamburg Police Department seeks "[d]isciplinary records, and any complaints submitted, properly certified authentic by the records custodian" for Police Officers William Hunt, Cori Kowalski, Amber Graham, and Larry Spry "for any of the following: demotion, suspension, retraining, excessive force, harassment, filing a false report, dishonesty/creditability." Dkt. #86-2, pp.13 & 17.

Defendant argues that there is no basis for disclosure of disciplinary records of non-party law enforcement officers who are not alleged to have been present

when the alleged use of force occurred. Dkt. #86-3, p.8. Defendant notes that plaintiff demanded this information during discovery and improperly attempted to subpoena the documents instead of challenging his discovery objections with a motion to compel. Dkt. #86-3, p.9. Defendant notes that he has already disclosed during discovery that his disciplinary record does not contain a prior excessive force incident. Dkt. #86-3, p.9. In any event, defendant argues that disciplinary records of law enforcement officers are inadmissible propensity evidence if offered to demonstrate that the officer subsequently used excessive force. Dkt. #86-3, p.9.

Plaintiff responds that disciplinary records of public servants are subject to subpoena. Dkt. #89-2, p.9. Plaintiff argues that the disciplinary records of non-parties are relevant because defendant has named these individuals as potential witnesses. Dkt. #89-2, p.12.

Federal law controls issues of discoverability, privileges and confidentiality in federal civil rights actions such as this. *Crosby v. City of New York*, 269 F.R.D. 267, 274 (S.D.N.Y. 2010). Thus, Section 50-a of New York's Civil Rights Law, which was repealed effective June 12, 2020, never governed discovery in cases commenced pursuant to 42 U.S.C. § 1983. *See Rossy v. City of Buffalo*, 17-CV-937, 2020 WL 2833001, at *3 (W.D.N.Y. June 1, 2020). Although the fact intensive nature of cases involving law enforcement officers as defendants in civil rights actions such as this often generates divergent determinations as to the scope of production of information contained in the personnel file of law enforcement officers, this Court determines that discovery should be limited to disclosure of complaints against defendants alleging similar misconduct or dishonesty. *See Saavedra v. City of N.Y.,* 19 Civ. 7491, 2021 WL 104057, at *2 (S.D.N.Y. Jan. 12, 2021). In as much as defendant Hunt has already responded to plaintiff's discovery demand that "neither the Cattaraugus County Sheriff's Office nor the Salamanca Police Department possessed any disciplinary records for defendant" (Dkt. #86-2, p.54, ¶ 17), plaintiff's motion to compel is denied as to

defendant Hunt. *See Crenshaw v. Herbert*, 409 Fed. App'x 428 (2d Cir. 2011) (denial of motion to compel proper where counsel affirmed that defendant's personnel file "contained no relevant disciplinary records."). However, plaintiff's motion to compel is granted in so far as plaintiff seeks disclosure of any complaints or disciplinary records regarding similar misconduct or dishonesty against defendant Kowalski. The motion to quash the subpoenas is granted.

Aegis CAD (Computer Operated Dispatch) System Operational Manuals

Plaintiff's subpoena to the Records Custodian, Cattaraugus County Sheriff's Office, seeks "[c]omplete copies of all Aegis CAD (Computer Operated Dispatch) system operational manuals." Dkt. #86-2, p.19.

Defendant argues that the operating manual for the dispatch system has no bearing on plaintiff's allegations of excessive force. Dkt. #86-3, p.10.

Plaintiff responds that he believes that he was under illegal surveillance before he was stopped. Dkt. #89-2, p.14. Plaintiff claims that defendants admitted that they destroyed GPS data relevant to plaintiff's ongoing state proceedings. Dkt. #89-2, pp.14-15. In support of this claim, plaintiff notes that in response to his request for "[a]ll GPS maps that show the locations and movements of all law enforcement patrol vehicles in Cattaraugus County from February 26, 2016, 5:00 PM until February 27, 2016, 5:00 PM, defendant Hunt stated that "no GPS from 2016 is available." Dkt. #89-13, p.9.

Operational manuals for the dispatch system utilized by defendants on the night plaintiff was stopped are not relevant to whether defendants used excessive force when they arrested plaintiff. Accordingly, the motion to quash this subpoena is granted and plaintiff's motion to compel is denied.

Stingray Devices

Plaintiff's subpoena to the Records Custodian, Cattaraugus County Sheriff's Office, seeks "[o]perators manual, invoice or lease agreement for any stingray devices, also known as 'cell site simulators' or 'IMSI catchers' certified authentic by the records custodian." Dkt. #86-2, p.23.

Defendant notes that he objected to plaintiff's discovery demand for these documents as overbroad and irrelevant, but also argues that plaintiff admits to seeking this information for purposes other than this lawsuit. Dkt. #86-3, p.11.

Plaintiff reiterates his belief that he was under illegal surveillance when he was stopped on the morning of February 27, 2016. Dkt. #89-2, p.17.

The availability of cell phone surveillance devices such as stingray devices for use by the Cattaraugus County Sheriff's Office is not relevant to whether defendants used excessive force when they arrested plaintiff. Accordingly, the motion to quash this subpoena is granted and plaintiff's motion to compel is denied

Audio Transcript of Plaintiff's April 6, 2016 Criminal Hearing

Plaintiff's subpoena to the Records Custodian, Town of Little Valley court, Court Clerk, seeks:

> The true, correct, complete and unedited audio transcript in the original .dcr format (1) for; People v. Christopher John Kochan Docket #1503001 . dated April 6, 2016. James R. Halterman Jr. "justice" . and former "court clerk" Julian S. Koch. Additional .wav copy of audio also subpoenaed certified authentic by records custodian."

Dkt. #86-2, p.21.

Defendant argues that this audio transcript is irrelevant to the claim of excessive force and notes that plaintiff already has the audio transcript. Dkt. #86-3, p.10.

Plaintiff argues that when the audio files are compared to the official transcript it is apparent that the audio files have been edited to cover up the assault of plaintiff by the wife of prosecuting Assistant District Attorney Marshall on April 6, 2016. Dkt. #89-2, p.15.

Setting aside the fact that plaintiff does not appear to seek this audio for its relevance to defendants' alleged use of excessive force on February 26, 2016, defendant's motion to quash the subpoena is granted and plaintiff's motion to compel is denied as moot in light of plaintiff's statement that he is in possession of an audio transcript as well as "two copies of the audio file Plaintiff obtained through the subpoena." Dkt. #89-2, p.15.

Videos of Plaintiff

Plaintiff's subpoena to the Records Custodian, Cattaraugus County District Attorney's Office, seeks "All Videos related/pertaining to Christopher Kochan (see also People v. Kochan 16-116), certified authentic by Records Custodian." Dkt. #86-2, p.25.

Defendant argues that all potentially relevant videos have been disclosed to plaintiff, including plaintiff's own dashcam video from the night of February 27, 2016. Dkt. #86-3, p11. Defendant states that he has confirmed that no video of plaintiff's booking exists. Dkt. #86-3, p.11-12.

Plaintiff argues that defendants have admitted to destruction of the videos of plaintiff's booking on February 27, 2016 and claims that defendants are attempting to cover up plaintiff's injuries. Dkt. #89-2, p.17.

In reliance upon defense counsel's statement that all videos relating to the alleged use of excessive force on February 27, 2016 have been produced to plaintiff, and that no video of plaintiff's booking exists, the motion to quash this subpoena is granted and the motion to compel is denied as moot.

Tickets issued by Defendant Kowalski

Plaintiff's subpoena to the Records Custodian, NYS DMV, Subpoena Office, seeks a

> Certified report of every TSLED ticket, or each ticket issued by Police Officer Cori Kowalski . . . for the period of January 1, 2015 to present for the county of Cattaraugus New York, certified authentic by the Records Custodian. See Exhibits 1&2 for the information sought from each ticket.

Dkt. #86-3, p.27.

Defendant notes that plaintiff is in possession of the tickets P.O. Kowalski issued to him on February 27, 2016 and argues that other tickets issued by P.O. Kowalski are not relevant to plaintiff's allegations of excessive force. Dkt. #86-2, p.12.

Plaintiff argues that this information will provide material to impeach P.O. Kowalski. Dkt. #89-2, pp.17-18.

Traffic tickets issued by P.O. Kowalski to other drivers are irrelevant to the question of whether the use of force by defendants against plaintiff on February 27, 2016 was excessive. Accordingly, defendant's motion to quash is granted and plaintiff's motion to compel is denied.

Remaining Subpoenas

The Court has reviewed the remaining subpoenas (Dkt. #89-34 through Dkt. #89-58), and is satisfied that the documents demanded have either already been

produced to plaintiff during the course of discovery; are available to plaintiff without the necessity of subpoena; or are not relevant to the alleged use of excessive force on February 27, 2016. Accordingly, plaintiff's motion to compel is denied with respect to the remaining subpoenas.

**SO ORDERED.**

DATED: Buffalo, New York
August 24, 2022

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**